UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STEVE CZINEGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-2178 (RCL) |
| | ) |
| HARLEY G. LAPPIN, Director, | ) |
| Federal Bureau of Prisons, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MOTION TO DISMISS

Defendant Harley G. Lappin ("Defendant"), Director, Federal Bureau of Prisons, hereby respectfully moves, pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or (6), to dismiss the complaint filed by Plaintiff Steve Czinege in this action for lack of standing, failure to exhaust administrative remedies, failure to state a claim upon which relief may be granted, and failure to adequately plead any claim.

In support of this Motion, Government Defendants respectfully refer the Court to the accompanying Memorandum of Points and Authorities and exhibits attached thereto. Because this is a dispositive motion, Defendant has not sought Plaintiff's consent. *See* L. Civ. R. 7(m). A proposed order is attached.

Dated: March 12, 2008
     Washington, DC

                            Respectfully submitted,

                            _____
                            JEFFREY A. TAYLOR, D.C. BAR #498610
                            United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/
_____
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| STEVE CZINEGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2178 (RCL) |
| | ) | |
| HARLEY G. LAPPIN, Director, | ) | |
| Federal Bureau of Prisons, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

For the reasons stated below, Defendant Harley G. Lappin ("Defendant"), Director, Federal Bureau of Prisons ("BOP" or "Agency"), hereby respectfully moves, pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and/or (6), to dismiss the complaint ("Complaint") filed by Plaintiff Steve Czinege ("Plaintiff" or "Czinege") in this action.

## PRELIMINARY STATEMENT

Plaintiff, who is represented by counsel, purports to bring this action to compel BOP to forward his international prisoner transfer application ("Application") to the Department of Justice, International Prisoner Transfer Unit ("IPTU") and to declare that BOP's established "protocol"[1] for forwarding applications does not comply with U.S. treaty obligations and the U.S. Code. For a number of reasons, Plaintiff's Complaint is meritless and should be dismissed.

*First*, Plaintiff failed to exhaust his administrative remedies for the claims in his Complaint. That is, Plaintiff failed to raise his claims under the BOP administrative procedure

---

[1]  It appears that Plaintiff uses the term "protocol" to refer to BOP's "practices" or "procedures" concerning the forwarding of Applications to IPTU. Defendant uses these terms interchangeably throughout this Motion.

for addressing inmate grievances.  Accordingly, this Court lacks jurisdiction to hear Plaintiff's claims.

*Second*, Plaintiff's claims are moot.  That is, Defendant has forwarded Plaintiff's Application to IPTU, and IPTU has approved Plaintiff's Application.[2]

*Third*, as a matter of law, BOP's protocols for assembling inmates' applications are not in conflict with any superior authorities.  Accordingly, Plaintiff fails to state a claim upon which relief may be granted.

In the alternative, Plaintiff's Complaint fails to fulfill even the most liberal of pleading standards.  Nowhere in Plaintiff's Complaint, which contains only two-pages of double-spaced substantive text, does Plaintiff articulate the treaties or code provisions that supposedly are in conflict with BOP's protocols for assembling and submitting applications.  Simply put, Plaintiff's Complaint does not move Plaintiff's claims over the line from conceivable to plausible, and therefore, in the alternative, Plaintiff's Complaint should be dismissed without prejudice.

\*    \*    \*

---

[2]    Although defense counsel has informed Plaintiff's counsel of these developments, Plaintiff has refused to withdraw his Complaint.

## BACKGROUND[3]

### I.    EVENTS GIVING RISE TO THIS ACTION.

#### A.    Plaintiff is Convicted and Sentenced.

On January 18, 2007, a jury in the United States District Court for the Western District of Washington returned a verdict finding Plaintiff, a Canadian citizen, guilty of one count of possession with the intent to distribute cocaine. *See* Jury Verdict of 1/18/2007, attached hereto at Exhibit A ("Attached Ex. A").   Thereafter, on May 7, 2007, the court entered Judgment sentencing Plaintiff to, among other things, 120 months imprisonment.  *See* Judgment of 05/07/2007, Attached Ex. B.  Following processing, on July 2, 2007, Plaintiff was designated to and incarcerated at the Lompoc Federal Correctional Complex ("FCI Lompoc" or "LOF").  *See* Public Information Inmate Data as of 03/12/2008 at 1, Attached Ex. C.

#### B.    Plaintiff Requests to be Transferred to a Canadian Prison.

Evidently at some point after arriving at FCI Lompoc, Plaintiff and/or his counsel requested that Plaintiff be transferred to a Canadian prison to serve his sentence.  *See* Compl. at ¶ 6.   The Complaint, however, is completely devoid of any factual allegations concerning Plaintiff's transfer request and his attempts to begin the application process, including what directions he received from the Warden and staff at FCI Lompoc and what actions he took to make his transfer request.  Moreover, Plaintiff fails to allege when he first requested a transfer and the timing concerning BOP's preparation of his Application package before he filed this action on December 10, 2007.  As of March 6, 2008, Plaintiff has not pursued an administrative proceeding challenging BOP's then failure to forward his Application package to IPTU, or

---

[3]    Pursuant to Rule 12(b)(1), the Court is permitted to refer to documents outside of the Complaint in considering whether the Court has jurisdiction over the Complaint, including whether Plaintiff has standing. *See Zivotofsky v. Sec'y of State*, 511 F. Supp. 2d 97, 102 (D.D.C. 2007) (Kessler, J.) ("In making its determination regarding the existence of subject matter jurisdiction, the court may consider matters outside the pleadings[.]").

BOP's protocols for preparing and forwarding application packages.  *See* Plumley Decl. at ¶ 5, Attached Ex. D.[4]

### C. Plaintiff's Application is Forwarded to IPTU and Approved.

After Plaintiff filed this action, Plaintiff's Application packet was finalized and, on January 4, 2008, was received by BOP's Central Office from the Warden at FCI Lompoc.  *See* Kaz Decl. at ¶ 4, Attached Ex. E.   That same day, BOP's Central Office forwarded Plaintiff's Application to IPTU.  *See id.*; Fax Cover Sheet of 01/04/2008, Attached Ex. F (confirming receipt of Plaintiff's Application); Wolff Decl. at ¶ 5-6, Attached Ex. G.  On February 19, 2008, IPTU approved Plaintiff's Application and notified the Institutional Reintegration Operations of the Correctional Service of Canada.  *See* Wolff Decl. at ¶ 8, Attached Ex. G; Letter from Wolff to Keravel of 02/19/ 2008, Attached Ex. H.

---

[4]     Although exhaustion under the PLRA (defined below) is an affirmative defense and not jurisdictional, pursuant to Rule 12(b)(6), the Court may consider the Plumley Declaration, which merely describes Plaintiff's administrative proceedings, on Defendant's motion to dismiss for failure to state a claim based upon Plaintiff's failure to exhaust.  *Brown v. Bureau of Prisons*, 498 F. Supp. 2d 298, 301 (D.D.C. 2007) (Kessler, J.) (the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice," pursuant to Rule 12(b)(6)) (internal quotations omitted).  Indeed, the Court may take judicial notice of administrative proceedings. *See, e.g., Conecuh-Monroe Cmty. Action Agency v. Bowen*, 852 F.2d 581, 583 (D.C. Cir. 1988) (taking judicial notice of an administrative decision); *Town of Norwood, Mass. v. New England Power Co.* 202 F.3d 408, 412 (1st Cir. 2000) (taking judicial notice of administrative proceedings); *Zamora v. Dep't of Homeland Sec.*, No. Civ. S-0-023 (RRB) (EFB), 2008 WL 215188, at *3, n.4 (E.D. Cal. Jan. 24, 2008) ("On a motion to dismiss pursuant to Rule 12(b)(6), a court may take judicial notice of facts outside the pleadings including records and reports of administrative bodies.)*, citing Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir.1986), *overruled on ot. grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 111 (1991).

Furthermore, if the Court finds it necessary to rely upon materials beyond those permitted in considering a Rule 12(b)(6) motion, it may do so by converting this Motion and entering summary judgment in favor of Defendant.  See Fed. R. Civ. P. 12(b); 56.  Plaintiff should take notice that any factual assertions contained in the documents attached to this motion may be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in such documents.  *See Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992); LCvR 7(h); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

## II.     SUMMARY OF THE COMPLAINT.

### A.     Factual Allegations.

As noted above, the Complaint barely includes any substantive factual allegations beyond: (i) Plaintiff being a prisoner and a Canadian citizen (Compl. at ¶ 4); and (ii) Plaintiff was sentenced on May 7, 2007.  Compl. at ¶ 6.  Indeed, the Complaint does not set forth any factual predicate for any of his claims.  That is, the Complaint does not allege: (a) the steps Plaintiff took to request a transfer to a Canadian prison; (b) the timing of any such steps; (c) what protocols were applied to his Application; (d) how long his Application was delayed by BOP protocols; or (e) what harm he suffered.  Notably, Plaintiff does not allege that BOP failed to follow the applicable regulations.

### B.     BOP's Alleged Protocols for Applications.

Although Plaintiff fails to allege a factual predicate for his claims, Plaintiff does set forth a summary of BOP's protocols for processing applications.  Specifically, Plaintiff alleges that BOP utilizes the following procedures before an application for an international transfer is considered by IPTU: (i) the inmate must arrive at his designated institution; (ii) after the inmate arrives at his institution and requests an international transfer, the institution can defer sending an inmate's application to BOP's Central Office for up to 90 days; (iii) even after an inmate's application is received at the Central Office, it may be some days or even weeks before the application is forwarded to IPTU, which will not consider an application until it receives an official application from BOP.  *See* Compl. at ¶ 5.  Notably, Plaintiff does not allege (a) how he was injured as a result of these procedures, or (b) how this protocol is in conflict with any superior authority (*e.g.*, the U.S. Code, U.S. treaties, the applicable regulations).  Indeed, as noted below, neither the applicable treaties nor statutes contain any requirements as to the timing

for submitting transfer applications to IPTU for a decision.  Moreover, the BOP procedures, as alleged by Plaintiff, are entirely consistent with the regulations promulgated under the relevant statute, which also do not contain any time requirements for the processing of applications.

### C.      Prayer for Relief.

Without articulating specific claims for relief or causes of action, Plaintiff's Complaint seeks (i) an order compelling BOP to forward Plaintiff's Application to IPTU (which it has already done), and (ii) to declare that BOP's protocol for forwarding such applications to IPTU does not comply with U.S. treaty obligations and the U.S. Code.

### III.    SUMMARY OF THE INTERNATIONAL PRISONER TRANSFER PROCESS.

### A.      Statutory Authority.

In 1977, Congress passed the Transfer of Offenders To or From Foreign Countries Act, 18 U.S.C. §§ 4100, *et seq.* (2008) (the "Act"), "to provide for the implementation of treaties for the transfer of offenders to or from foreign countries."  *See* Act, Pub. L. No. 95-144, 91 Stat. 1212.  Transfers are authorized by the Act only when a treaty providing for such a transfer is in force, and shall only be applicable to transfers of offenders to and from a foreign country pursuant to such a treaty.  18 U.S.C. § 4100(a).

Pursuant to the Act, the Attorney General is authorized to approve or disapprove individual transfers under international prisoner transfer treaties. 18 U.S.C. §4102(3).  Moreover, the Attorney General is authorized "to make regulations for the proper implementation of such treaties in accordance with this chapter and to make regulations to implement this chapter."  18 U.S.C. § 4102(4).  Notably, the Act does not contain any requirements concerning the timing for considering applications for international transfer, or substantive standards the Attorney General

- 6 -

must use in determining whether to approve such a transfer.  Indeed, the Attorney General has

unfettered discretion to grant or deny applications for transfer under the Act.[5]

### B.    Prison Transfer Treaties Between the United States and Canada.

In 1985, the United States and Canada ratified a multinational treaty entitled the Council

of Europe Convention on the Transfer of Sentenced Persons, T.I.A.S. No. 10,824, 22 I.L.M. 530

(1983) (herein the "Treaty").[6]    Article 2 of the Treaty sets forth the mechanics for an

international prisoner transfer.  "A person sentenced in the territory of a Party may be transferred

to the territory of another Party, in accordance with the provisions of this Convention, in order to

serve the sentence imposed on him.  To that end, he may express his interest to the sentencing

State or to the administering State in being transferred under this Convention."  Treaty at Art. 2,

part (2).  Transfer may be requested by either the sentencing State or the administering State.

Treaty at Art. 2, part (3).

The Treaty also lists necessary conditions precedent which must be satisfied before a

sentenced person may be transferred.  A sentenced person may be transferred only (a) if he is a

national of the administering State; (b) if the judgment is final; (c) if he has at least six months to

serve on his sentence, or his sentence is indeterminate; (d) if he consents to the transfer; (e) if the

acts for which he was sentenced also constitute a criminal offense if committed in the

---

[5]    Because the Act gives the Attorney General such unfettered discretion, the Act creates no cognizable liberty interest in international prisoner transfers.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) ("prison regulations [that] place no substantive limitations on official discretion . . . create no liberty interest entitled to protection under the Due Process Clause.").

[6]    The U.S. and Canada also have a bilateral treaty for prisoner transfer, which has provisions similar to those of the Treaty and does not include any express provisions regarding the timing of transfer applications.  *See* Treaty Between the United States and Canada on the Execution of Penal Sentences, T.I.A.S. No. 9552, 30 U.S.T. 6263 (1977).  Moreover, the U.S. and Canada are also parties to the multinational treaty entitled, the Inter-American Convention on Serving Criminal Sentences Abroad, S. Treaty Doc. No. 104-35, 1995 WL 905075 (1995), which also contains provisions similar to those of the Treaty and also includes no timing requirements.

administering State; and (f) if the sentencing and administering State agree to the transfer. Treaty, Art. 3, part (1).

Although the objective of the Treaty is to transfer prisoners to their own countries, the decision to approve or deny a transfer request is left entirely up to the discretion of the sentencing State. Moreover, nothing in the Treaty requires transfer unless the sentencing and administering States agree that transfer is appropriate. See Treaty, Art. 3, part (1)(f). The Treaty is also void of any guidelines or factors to consider in determining whether transfer is appropriate, and any requirements as to the timing of applications for transfers.

### C.    Delegation to the Office of Enforcement Operations, Criminal Division.

The Attorney General is authorized "to act on behalf of the United States as the authority referred to in a treaty," see 18 U.S.C. § 4102(1), and is further authorized "to delegate the authority conferred by this chapter to officers of the Department of Justice." See 18 U.S.C. § 4102(11). The Attorney General's authority has been delegated to the Director, Senior Associate Director, and Associate Directors of the Office of Enforcement Operations ("OEO"), Criminal Division, United States Department of Justice. See 28 CFR § 0.64-2. The IPTU is within the Office of Enforcement Operations and has the authority to review transfer applications and to recommend approval or denial of an application to the OEO Director and Associate Directors.

### D.    Applicable Regulations.[7]

Pursuant to the Act, certain regulations have been promulgated to implement the Act. *See* 28 C.F.R. § 527.40 *et seq.* 28 C.F.R. § 527.44 provides the relevant regulation concerning the application by a federal inmate for an international transfer. Specifically, such section

---

[7]    From a plain reading of the Complaint, Plaintiff has not challenged the promulgation of such regulations by the Attorney General, but rather alleges that the practices used by BOP for compliance with such regulations is contrary to U.S. treaties and the U.S. Code. Indeed, the Attorney General is not a party to this action.

provides that an inmate who is eligible and interested in such a transfer "shall indicate his interest by completing and signing the appropriate form and forwarding it to the Warden at the institution where the inmate is confined." *Id.* The regulation then provides that "[u]pon verifying that the inmate is qualified for transfer, the Warden shall forward all relevant information, including a complete classification package, to the Assistant Director, Correction Programs Division" (*i.e.* BOP's Central Office). *Id.* The regulation continues and next states that BOP's Central Office "shall review the submitted material and forward it to" IPTU. *Id.* As noted above, BOP's procedures are entirely consistent with these regulations.

## ARGUMENT

Plaintiff's Complaint should be dismissed for the following reasons.

### I.    MOTION TO DISMISS STANDARDS.

#### A.    Lack of Subject Matter Jurisdiction.

"The court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[.]" *Judicial Watch, Inc. v. U.S. Food & Drug Admin.*, 514 F. Supp. 2d 84, 86 (D.D.C. 2007) (Lamberth, J.). "When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *Bailey v. Mut. of Omaha Ins. Co.*, --- F. Supp. 2d ---, 2008 WL 342667, at *4 (D.D.C. Feb. 08, 2008) (Lamberth, J.) (internal quotations omitted). That is, "Federal courts are courts of limited jurisdiction and the law presumes that a cause lies outside this limited jurisdiction." *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 18 (D.D.C. 2007) (Urbina, J.) (internal quotations omitted). Moreover, "[i]n deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its

effort to determine whether the court has jurisdiction in the case." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 104 (D.D.C. 2007) (Lamberth, J.) (internal quotations omitted).

For the reasons stated below, when this standard is applied to Plaintiff's claims, such claims should be dismissed because Plaintiff lacks standing.

**B.    Failure to State A Claim Upon Which Relief Can Be Granted.**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007), *citing Twombly*. Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support Plaintiff's claim for relief. *Id.* Indeed, "[w]hile a complaint need not plead 'detailed factual allegations,' the factual allegations it does include 'must be enough to raise a right to relief above the speculative level' and to 'nudge . . . claims across the line from conceivable to plausible.'" *Elemary v. Phillipp Holzmann A.G.*, --- F. Supp. 2d ---, 2008 WL 316376, at *10 (D.D.C. Feb. 6, 2008) (Lamberth, J.), *quoting Twombly*.

The Court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004), *citing Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court

need not "accept legal conclusions cast in the form of factual allegations." *Id.* For the reasons stated below, even if this Court has subject matter jurisdiction, Plaintiff has failed to plead a claim upon which relief can be granted.

## II. PLAINTIFF'S CLAIMS ARE BARRED BECAUSE HE FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Plaintiff has failed to exhaust his administrative remedies with regard to the claims raised in his Complaint. The Prison Litigation Reform Act ("PLRA") requires prisoners to properly exhaust such administrative remedies as are available before bringing an action in federal court regarding prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002), *interpreting* 42 U.S.C. § 1997e(a). Indeed, "the PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387 (2006). Accordingly, if an inmate has not exhausted his administrative remedies before filing suit, the court must dismiss the inmate's complaint. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

The BOP has implemented a three-tiered administrative remedy procedure under 28 C.F.R. § 542.10-542.18 to review any complaint regarding an inmate's confinement. The BOP's regulations require inmates first to attempt resolution of their complaints informally by discussing the matter with a member of their Unit Team. *See* 28 C.F.R. §542.13. If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within 20 days of the date on which the basis of the complaint occurred. 28 C.F.R. §542.14. If the inmate is not satisfied with the Warden's response, the inmate may appeal the response to the Regional Director within 20 days of the Warden's decision. 28 C.F.R. §542.15.

If the inmate is dissatisfied with the regional response, the inmate may then file a national appeal

with the Office of General Counsel in Washington, D.C., within 30 days of the date of the

Regional Director's decision.  *See* 28 C.F.R. §542.15.  Appeal to the Office of General Counsel

is the final administrative appeal in the BOP.  An administrative remedy is not considered

exhausted until the Central Office has issued a formal response to the inmate.

In the present case, plaintiff failed to exhaust his administrative remedies.  Quite clearly,

his claims concerning BOP's failure to forward his Application are claims concerning prison life

and the terms of his confinement -- *i.e.*, where Plaintiff will be serving his sentence.  Plaintiff,

however, has not filed (let alone appealed through each level of review) any administrative

grievance concerning the claims he brings in his Complaint.  *See* Plumley Decl. at ¶ 5, Attached

Ex. D.  Therefore, Plaintiff has not properly exhausted his administrative remedies, and his

claims should be dismissed.

## III.    PLAINTIFF LACKS STANDING BECAUSE HIS CLAIMS ARE MOOT.

Even if Plaintiff were to have exhausted his administrative remedies, because Defendant

has forwarded Plaintiff's Application to the IPTU and "remedied" Plaintiff's alleged injury, his

claims against BOP are moot.

This Court recently reviewed the mootness doctrine:

> The court will lack subject matter jurisdiction if the defendant
> demonstrates that the plaintiff's claim is moot.  *See DeFunis v.*
> *Odegaard*, 416 U.S. 312, 316 (1974) (explaining that the federal
> judiciary is unable to review moot cases because a court may only
> exercise its power pursuant to Art. III of the Constitution if an
> actual case or controversy exists).  The defendant's "burden is a
> heavy one." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633
> (1953).  To meet this burden and demonstrate that a case is moot,
> the defendant must show that events have transpired which prevent
> the court from granting the plaintiff effective relief. *Burlington N.*
> *R.R., v. Surface Transp. Bd.*, 75 F.3d 685, 688 (D.C.Cir.1988).
> Provided that the intervening events "have completely and
> irrevocably eradicated the effects of the alleged violation," the

> court will dismiss the claim. *County of Los Angeles v. Davis*, 440
> U.S. 625, 631 (1979).  If, however, the plaintiff suffers a "legally
> cognizable injury traceable to the alleged violations," *Kennecott
> Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1207
> (D.C.Cir.1996), or if a "partial remedy" is available, *Calderon v.
> Moore*, 518 U.S. 149, 150 (1996), the court may not dismiss the
> case as moot.

*Ctr. for Biological Diversity v. Kempthorne*, 498 F. Supp. 2d 293, 296 (D.D.C. 2007) (Lamberth,

J.).

Surely in this case, "intervening events have completely and irrevocably eradicated the

effects of the alleged violation" -- *i.e.*, failing to forward Plaintiff's Application to the IPTU.  *Id.*

That is, Plaintiff no longer has a cognizable injury traceable to the alleged violations because

Defendant forwarded his Application to the IPTU.  Moreover, after BOP forwarded Plaintiff's

Application to the IPTU, the IPTU approved Plaintiff's Application, thereby compounding the

mootness of Plaintiff's claims.  *See, surpa,* at 4.    Accordingly, Plaintiff lacks standing, and this

action should be dismissed with prejudice.[8]

## IV.    BOP PROTOCOLS FOR FORWARDING APPLICATIONS DO NOT CONFLICT WITH ANY HIGHER AUTHORITIES.

Even if Plaintiff were to have standing, as a matter of law, BOP's "protocol" for

processing applications does not violate the Treaty or the Act.  As noted in detail above, neither

the Treaty nor the Act prescribes any timing requirements for processing applications for

---

[8]     Plaintiff also lacks standing because the Treaty and the Act do not provide Plaintiff a private right of action. That is, absent a provision in a treaty that confers rights upon individuals, the courts can give no redress to a person who is injured by a failure of a government to observe the terms of the treaty; such is a political question and one claiming injury must look to his government for relief.  *See Canadian Transp. Co. v. United States*, 430 F. Supp. 1168 (D.D.C. 1977); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984).  Moreover, the Act gives the Attorney General unfettered discretion in determining whether a transfer under the Act or the Treaty should be granted, and prescribes no rules that create substantive limitations on the Attorney General's discretion upon which private rights may be derived.  *See Bagguley*, 953 F.2d at 662; *Scalise v. Thornburgh*, 891 F.2d 640, 649 (7th Cir. 1989).  As neither the Treaty nor the Act confers upon Plaintiff any right to an international transfer, such authorities provide no private right of action for alleged violations of their provisions.  *See Coleman v. Reno*, 91 F. Supp. 2d 130, 132 (D.D.C. 2000) (Robertson, J.), *citing Bagguley v. Bush*, 953 F.2d 660 (D.C. Cir. 1991). Accordingly, Plaintiff lacks standing to assert a violation of the Treaty or the Act.

international transfers.  *See, supra*, at 6, 8.  Accordingly, Plaintiff's generalized complaint that the BOP "protocol" takes too long, even if it were to be true, does not run contrary to the Act or the Treaty.

Moreover, the BOP's "protocol" as alleged by Plaintiff is entirely consistent with the regulations promulgated under the Act.  Indeed, such regulations call for (i) a prisoner to submit a form to the applicable Warden, (ii) for the Warden to review the form and associated materials and forward them to BOP's Central Office; and (iii) for BOP's Central Office to review the Application and submit it to the IPTU for a decision.  *See, supra*, at 8-9.  This is the exact procedure that BOP's alleged "protocol" employs.  Accordingly, Plaintiff has failed to state a claim upon which relief may be granted.

## V.   IN THE ALTERNATIVE, PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD ANY CLAIM.

Even if the Court does not dismiss the Complaint with prejudice, the Court should dismiss the Complaint without prejudice because Plaintiff has failed to plead a single fact upon which his claims could be premised.  As noted above, the Supreme Court's decision in *Twombly*, 127 S. Ct. at 1974, requires a plaintiff to plead "enough facts to state a claim for relief that is plausible on its face." *Id.*   The Complaint in this action does not comply with this liberal pleading standard.   The Complaint itself is completely devoid of any factual allegations concerning how BOP's procedures for forwarding applications runs afoul of the Treaty, the Act or the regulations promulgated thereunder.  Moreover, Plaintiff fails to plead how he has been injured by BOP's alleged unlawful conduct.

\*   \*   \*

- 14 -

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court dismiss the

Complaint with prejudice, or in the alternative, without prejudice.

Dated: March 12, 2008
        Washington, DC

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


            /s/
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


            /s/
_____
BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*

# EXHIBIT
## A

1

2

3

FILED —— ENTERED
—— LODGED —— RECEIVED

JAN 1 8 2007

4

5

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON    DEPUTY

6

BY

7

## UNITED STATES DISTRICT COURT

8

### WESTERN DISTRICT OF WASHINGTON

9

### AT SEATTLE

10

11  UNITED STATES OF AMERICA,

12                              Plaintiff,

13  v.

14  STEVE ATTILA CZINEGE,

15                              Defendant.

16

NO. CR06-609JLR

VERDICT FORM

17

18      We, the jury, unanimously find as follows:

19

20      (A)    As to Count 1, charging the Defendant STEVE ATTILA CZINEGE with

21             possession with intent to distribute cocaine, we find the Defendant STEVE

22             ATTILA CZINEGE,

23                      _____ Not Guilty          ___X___ Guilty

24

25

26

27

28

06-CR-00109-STIP

(B)    Answer this question only if you find the Defendant guilty of Count 1. As to Count 1, do you unanimously find, beyond a reasonable doubt, that the Defendant's commission of the offense involved:

(Select only one)

____X____ five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine.

_____ we are unable to unanimously agree on the above quantity range.

DATED this __18Th__ day of January, 2007

_____
PRESIDING JUROR

# EXHIBIT B

# UNITED STATES DISTRICT COURT

Western District of Washington

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **V.** | |
| STEVE ATTILA CZINEGE | Case Number: CR06-00109JLR |
| | USM Number: 36288-086 |
| | Jeff Grant |
| | Defendant's Attorney |

ENTERED
FILED
LODGED
RECEIVED

MAY - 7 2007

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY
BY

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☒ was found guilty on count(s)  1 _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 U.S.C. 841(a)(1) and 841(b)(1)(A) | Possession with Intent to Distribute Cocaine | 02/27/2006 | 1* |

The defendant is sentenced as provided in pages 2 through ____6____ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

_____
Assistant United States Attorney    JILL OTAKE

MAY 7, 2007
Date of Imposition of Judgment

_____
Signature of Judge

The Honorable James L. Robart
United States District Judge

May 7, 2007
Date

06-CR-00109-JGM

AO 245B    (Rev. 06/05) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page ___2___ of ___6___

DEFENDANT:         STEVE ATTILA CZINEGE
CASE NUMBER:       CR06-00109JLR

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:                              120 MONTHS

☑ The court makes the following recommendations to the Bureau of Prisons:

Mr. Czinege should serve his sentence at Sheridan, Oregon or at another facility on the West Coast.

The Court finds no reason to oppose a treaty transfer request when it is appropriately made.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at _____ ☐ a.m. ☐ p.m. on _____.

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on _____.

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
                              UNITED STATES MARSHAL

By _____
                    DEPUTY UNITED STATES MARSHAL

DEFENDANT:          STEVE ATTILA CZINEGE
CASE NUMBER:        CR06-00109JLR

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of : ___5___ years

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug and/or alcohol test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed eight valid tests per month, pursuant to 18 U.S.C. § 3563(a)(5) and 18 U.S.C. § 3583(d).

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☒ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☒ The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐ The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 3C — Supervised Release Case 02178-RCL    Document 5-3    Filed 03/12/2008    Page 5 of 7

Judgment—Page    4    of    6

DEFENDANT:        STEVE ATTILA CZINEGE
CASE NUMBER:      CR06-00109JLR

## SPECIAL CONDITIONS OF SUPERVISION

1) The defendant shall submit to a search of his or her person, residence, office, property, storage unit or vehicle conducted in a reasonable manner and at a reasonable time by a probation officer.

2) The defendant shall provide his or her probation officer with access to any requested financial information including authorization to conduct credit checks and obtain copies of the defendant's Federal Income Tax Returns.

3) If deported, the defendant shall not reenter the United States without permission of the Bureau of Immigration Customs Enforcement. If granted permission to reenter, the defendant shall contact the nearest U.S. Probation Office within 72 hours of reentry.

Judgment — Page ___5___ of ___6___

DEFENDANT:          STEVE ATTILA CZINEGE
CASE NUMBER:        CR06-00109JLR

## CRIMINAL MONETARY PENALTIES

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 100 | $ Waived | $ N/A |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
|  | N/A | N/A |  |
| **TOTALS** | $ 0 | $ 0 |  |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the ☐ fine ☐ restitution.

    ☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

☒ The court finds that the defendant is financially unable and is unlikely to become able to pay a fine and, accordingly, the imposition of a fine is waived

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT: STEVE ATTILA CZINEGE
CASE NUMBER: CR06-00109JLR

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

☒ PAYMENT IS DUE IMMEDIATELY. Any unpaid amount shall be paid to Clerk's Office, United States District Court, 700 Stewart Street, Seattle, WA 98101.

    ☒ During the period of imprisonment, no less than 25% of their inmate gross monthly income or $25.00 per quarter, whichever is greater, to be collected and disbursed in accordance with the Inmate Financial Responsibility Program.

    ☒ During the period of supervised release, in monthly installments amounting to not less than 10% of the defendant's gross monthly household income, to commence 30 days after release from imprisonment.

    ☐ During the period of probation, in monthly installments amounting to not less than 10% of the defendant's gross monthly household income, to commence 30 days after the date of this judgment.

    The payment schedule above is the minimum amount that the defendant is expected to pay towards the monetary penalties imposed by the Court. The defendant shall pay more than the amount established whenever possible. The defendant must notify the Court, the United States Probation Office, and the United States Attorney's Office of any material change in the defendant's financial circumstances that might affect the ability to pay restitution.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program are made to the United States District Court, Western District of Washington. For restitution payments, the Clerk of the Court is to forward money received to the party(ies) designated to receive restitution specified on the Criminal Monetaries (Sheet 5) page.

*The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.*

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# EXHIBIT
# C

Case 1:07-cv-02178-RCL   Document 5-4   Filed 03/12/2008   Page 2 of 8

```
REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010          ALL CURR COMPS(Y/N): Y  ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 805-736-4154   FAX: 805-736-7163
                                             RACE/SEX...: WHITE / MALE
                                             AGE: 41
PROJ REL MT: GOOD CONDUCT TIME RELEASE       PAR ELIG DT: N/A
PROJ REL DT: 08-10-2015                       PAR HEAR DT:
------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL    ASSIGNMENT  DESCRIPTION                START DATE/TIME STOP  DATE/TIME
LOF    A-DES       DESIGNATED, AT ASSIGNED FACIL 12-17-2007 1032 CURRENT
LOF    LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN 12-17-2007 0908 12-17-2007 1032
LOF    A-DES       DESIGNATED, AT ASSIGNED FACIL 07-02-2007 1200 12-17-2007 0908
B13    RELEASE     RELEASED FROM IN-TRANSIT FACL 07-02-2007 1500 07-02-2007 1500
B13    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 07-02-2007 0913 07-02-2007 1500
VIP    HLD REMOVE  HOLDOVER REMOVED             07-02-2007 0613 07-02-2007 0613
VIP    A-HLD       HOLDOVER, TEMPORARILY HOUSED  06-13-2007 1730 07-02-2007 0613
B13    RELEASE     RELEASED FROM IN-TRANSIT FACL 06-13-2007 2030 06-13-2007 2030

G0002        MORE PAGES TO FOLLOW . . .
```

```
     BOPOL              *  PUBLIC INFORMATION        *   03-12-2008
  PAGE 002          Case 1:07-cv-02178-RCL  Document 5-4  Filed 03/12/2008   Page 3 of 8   08:23:16
                                    INMATE DATA
                                AS OF 03-12-2008
```

```
REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                      PHONE..: 805-736-4154    FAX: 805-736-7163
B13    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  06-13-2007 1209 06-13-2007 2030
DUB    HLD REMOVE  HOLDOVER REMOVED                06-13-2007 0909 06-13-2007 0909
DUB    A-BOP HLD   HOLDOVER FOR INST TO INST TRF   06-12-2007 1350 06-13-2007 0909
B05    RELEASE     RELEASED FROM IN-TRANSIT FACL   06-12-2007 1650 06-12-2007 1650
B05    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  06-12-2007 0602 06-12-2007 1650
SHE    HLD REMOVE  HOLDOVER REMOVED                06-12-2007 0302 06-12-2007 0302
SHE    A-HLD       HOLDOVER, TEMPORARILY HOUSED    06-08-2007 1749 06-12-2007 0302
A02    RELEASE     RELEASED FROM IN-TRANSIT FACL   06-08-2007 2049 06-08-2007 2049
A02    A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL  06-08-2007 1300 06-08-2007 2049
SET    HLD REMOVE  HOLDOVER REMOVED                06-08-2007 1000 06-08-2007 1000
SET    A-HLD       HOLDOVER, TEMPORARILY HOUSED    05-08-2007 0754 06-08-2007 1000
SET    ADM CHANGE  RELEASE FOR ADMISSION CHANGE    05-08-2007 0752 05-08-2007 0754
SET    A-PRE       PRE-SENT ADMIT, ADULT           01-18-2007 1954 05-08-2007 0752


G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-02178-RCL   Document 5-4   Filed 03/12/2008   Page 4 of 8

REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010          ALL CURR COMPS(Y/N): Y    ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 805-736-4154    FAX: 805-736-7163
PRE-RELEASE PREPARATION DATE: 02-10-2015

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  08-10-2015 VIA GCT REL

---------------------CURRENT JUDGMENT/WARRANT NO: 010 ---------------------

COURT OF JURISDICTION...........: WASHINGTON, WESTERN DISTRICT
DOCKET NUMBER...................: CR06-00109JLR
JUDGE...........................: ROBART
DATE SENTENCED/PROBATION IMPOSED: 05-07-2007
DATE COMMITTED..................: 07-02-2007
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

G0002      MORE PAGES TO FOLLOW . . .

Case 1:07-cv-02178-RCL   Document 5-4   Filed 03/12/2008   Page 5 of 8

REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS          RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                     PHONE..: 805-736-4154   FAX: 805-736-7163

                    FELONY ASSESS  MISDMNR ASSESS   FINES         COSTS
NON-COMMITTED.:     $100.00        $00.00           $00.00        $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

-------------------------CURRENT OBLIGATION NO: 010 -------------------------
OFFENSE CODE....: 381
OFF/CHG: 21:841(A)(1) AND 841 (B)(1)(A) POSSESSION WITH INTENT TO
         DISTRIBUTE COCAINE CT 1

  SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:   120 MONTHS


  G0002      MORE PAGES TO FOLLOW . . .

Case 1:07-cv-02178-RCL   Document 5-4   Filed 03/12/2008   Page 6 of 8

```
REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010          ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 805-736-4154    FAX: 805-736-7163
 TERM OF SUPERVISION............:     5 YEARS
 DATE OF OFFENSE................: 02-27-2006


------------------------CURRENT COMPUTATION NO: 010 ------------------------


COMPUTATION 010 WAS LAST UPDATED ON 09-12-2007 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 09-12-2007 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 05-07-2007
TOTAL TERM IN EFFECT............:   120 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    10 YEARS

G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:07-cv-02178-RCL   Document 3-4   Filed 03/12/2008   Page 7 of 8
PUBLIC INFORMATION
INMATE DATA
AS OF 03-12-2008

03-12-2008
08:23:16

REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                   PHONE..: 805-736-4154   FAX: 805-736-7163
EARLIEST DATE OF OFFENSE........: 02-27-2006

JAIL CREDIT....................:    FROM DATE     THRU DATE
                                    02-28-2006    04-24-2006
                                    01-18-2007    05-06-2007

TOTAL PRIOR CREDIT TIME.........: 165
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 470
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 08-10-2015
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 11-22-2016

G0002      MORE PAGES TO FOLLOW . . .

Case 1:07-cv-02178-RCL   Document 5-4   Filed 03/12/2008   Page 8 of 8

REGNO..: 36288-086 NAME: CZINEGE, STEVE ATTILA
COMP NO: 010      ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS      RESP OF: LOF / DESIGNATED, AT ASSIGNED FACIL
                  PHONE..: 805-736-4154   FAX: 805-736-7163

PROJECTED SATISFACTION DATE.....: 08-10-2015
PROJECTED SATISFACTION METHOD...: GCT REL

S0055      NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEVE CZINEGE,    )
        PLAINTIFF,    )
    )
    )
    )
    v.    )    Civil Action No. 07-CV-02178
    )
    )
HARLEY G. LAPPIN, DIRECTOR FEDERAL    )
BUREAU OF PRISONS,    )
        DEFENDANT.    )
    )

## DECLARATION OF BRUCE PLUMLEY

I, Bruce Plumley, hereby make the following declaration:

1.    I am an Administrative Remedy Specialist for the Federal Bureau of Prisons (BOP) in Washington, D.C., and have been served in this capacity since August 22, 2005. I have been employed with the BOP since March 8, 1992.

2.    The BOP's administrative remedy procedure is set out in 28 C.F.R. § 542.10 et seq., and provides formal review of any complaint which relates to any aspect of the inmate's confinement. Within this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of the unit team. A record of the attempt is signed by the inmate and a member of the unit team. If informal resolution is insufficient to resolve the matter, the inmate may submit a formal written administrative remedy request to the Warden, on a designated form, within twenty days of the event that triggered the inmate's complaint. 28 C.F.R. § 542.14 (a). If the inmate is not satisfied with the Warden's response, he or she may appeal the response to the Regional Director, within twenty calendar days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the regional response, he or she may file a national appeal with the Office of General Counsel (in the Central Office) in Washington, D.C. within thirty calendar days of the date the Regional Director signed the response. Id. An appeal to the Central Office is the final administrative appeal in the BOP. No request for administrative remedy is considered to have been fully exhausted until Central Office has issued a formal response to the inmate.

3.    As an Administrative Remedy Specialist, I have access to the BOP database known as SENTRY. All administrative remedy requests and appeals filed by Bureau of Prisons' inmates are cataloged under a permanent and unique number which is maintained in this database.

4.      On March 6, 2008, I reviewed the SENTRY database for administrative remedies filed by the plaintiff Steve Czinege, Register Number 36288-086. This review revealed that plaintiff has submitted a total of six (6) administrative remedy requests and appeals.

5.      From my review, I found plaintiff has pursued only one administrative remedy submission to exhaustion. However, a response has not been issued, as it is not due until April 2007. In addition, none of his submissions, including the one pending, pertain to the issues raised in his complaint regarding an application for an international prisoner transfer to Canada or the BOP's method for handling international prisoner transfer applications. Therefore, plaintiff has failed to exhaust his administrative remedies with respect to any of the issues addressed in his complaint.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this __6th__ day March 2008.


_____
Bruce Plumley
Administrative Remedy Specialist
Office of General Counsel

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVE CZINEGE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2178 (RCL) |
| | ) | |
| | ) | |
| HARLEY G. LAPPIN, DIRECTOR FEDERAL | ) | |
| BUREAU OF PRISONS, | ) | |
| Defendant. | ) | |
| | ) | |

DECLARATION OF SANDRA KAZ

I, Sandra Kaz, hereby make the following declaration:

1.    I am currently employed by the United States Government, Federal Bureau of Prisons (BOP), as a Senior Correctional Programs Specialist in the Correctional Programs Branch, in Central Office, Washington, D.C.   I have held this position since November, 2002, and have been employed with the BOP since February 22, 1988.

2.     In accordance with 28 C.F.R. §527.44(a),  an inmate who is a citizen of a treaty nation and is qualified for and desires to return to his or her country of citizenship to serve the sentence imposed in a United States Court, shall inform the Warden at the institution where he or she is confined by completing and signing the appropriate form.   The Warden shall forward the inmate's initial application packet, to include a completed Case Summary and all relevant information, to the Assistant Director, Correctional Programs Division, located in Central Office in Washington D.C.  See 28 C.F.R. §527.44(b).  As a Senior Correctional Programs Specialist, one of my responsibilities is to review and process all treaty transfer application packets received at Central Office and to forward the packets to the International Prisoner Transfer Unit (IPTU), Office of Enforcement Operations, Criminal Division, Department of Justice.  See 28 C.F.R. §527.44(c) .

3.    I am aware that inmate Steve Czinege, Register Number 36288-086, who is currently incarcerated at FCI Lompoc has filed a complaint alleging that the institution had not forwarded his international prisoner transfer application packet to the Assistant Director, Correctional Programs Division, Central Office.  Thus, he claims that the packet had not been received at the IPTU for processing.

4.    On January 4, 2008, a copy of inmate Czinege's international prisoner transfer application packet was received in Central Office from the Warden at FCI Lompoc.   On

January 4, 2008, inmate Czinege's application packet was forwarded to the International Prisoner Transfer Unit.  <u>See</u> Fax Cover Sheet from IPTU dated January 4, 2008.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this <u>12</u> day March, 2008.

Sandra Kaz
Senior Correctional Programs Specialist
Correctional Programs Division
Federal Bureau of Prisons



**U.S. Department of Justice**

10ᵗʰ & Constitution Avenue, N.W.
Criminal Division
Office of Enforcement Operations

---

*International Prisoner Transfer Unit*
*John C. Keeney Building, 12ᵗʰ Floor*
*Washington, D.C. 20530*

### FAX COVER SHEET

To:     Sandy Kaz, Correctional Programs Specialist
        Federal Bureau of Prisons
        Correctional Programs Division, Room 554
        320 First St. NW
        Washington, DC 20534
        202-305-9681     **FAX (202-353-9047) 3-9047**

From:   Abigail Staruk
        International Prisoner Transfer Unit, OEO
        U.S. Department of Justice
        email:abigail.staruk@usdoj.gov
        202-514-3173 (main)
        202-353-9421 (desk)     **FAX 202- 514-9003**

Date:   **January 4, 2008 (2:55pm)**

Number of pages including this cover: 4

RE: Application Packets Forwarded to IPTU - (~~Dec 8, 2007~~)     Jan.4.2008 / *Sorry! I forgot to change the date! ~AS*

### **ALSO RECEIVED APPLICATION FOR CZINAGA, STEVE REG. NO. 36288-086**

# EXHIBIT F



**U.S. Department of Justice**

10ᵗʰ & Constitution Avenue, N.W.
Criminal Division
Office of Enforcement Operations

*International Prisoner Transfer Unit*
*John C. Keeney Building, 12ᵗʰ Floor*
*Washington, D.C.  20530*

## FAX COVER SHEET

To:    Sandy Kaz, Correctional Programs Specialist
       Federal Bureau of Prisons
       Correctional Programs Division, Room 554
       320 First St. NW
       Washington, DC 20534
       202-305-9681        **FAX (202-353-9047) 3-9047**

From:  Abigail Staruk
       International Prisoner Transfer Unit, OEO
       U.S. Department of Justice
       email:abigail.staruk@usdoj.gov
       202-514-3173 (main)
       202-353-9421 (desk)        **FAX 202- 514-9003**

Date:  **January 4, 2008 (2:55pm)**

Number of pages including this cover: 4

RE: Application Packets Forwarded to IPTU - (~~Dec. 8, 2007~~) Jan. 4, 2008

*Sorry! I forgot to change the date! —AS*

**\*\*ALSO RECEIVED APPLICATION FOR CZINAGA, STEVE REG. NO. 36288-086\*\***

# EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STEVE CZINEGE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-2178 (RCL) |
| HARLEY G. LAPPIN, Director, Federal Bureau of Prisons, | ) ) ) | |
| Defendant. | ) ) ) | |

### *DECLARATION OF PAULA WOLFF*

I, Paula Wolff, pursuant to 28 U.S.C. §1746, declare under penalty of perjury that the following are true and based on my personal knowledge:

1.  I am over the age of 18 and am fully competent to make this declaration.

2.  I am the Chief of the International Prisoner Transfer Unit ("IPTU") in the Office of Enforcement Operations ("OEO") of the Criminal Division of the United States Department of Justice.

3.  I am responsible for administering the International Prisoner Transfer Program. The United States has transfer treaty relationships with over 70 countries pursuant to which foreign nationals sentenced in the United States and Americans sentenced in a foreign country may be transferred to their home country to serve their sentences.

4.  Through my position, I am familiar with Plaintiff's application to be transferred to a Canadian prison to serve the remainder of his sentence.

5.  On January 4, 2008, the IPTU received Plaintiff's international

prisoner transfer application packet ("Application") from the Central Office of the Bureau of Prisons ("BOP").

6.    On that same date, the IPTU sent a Fax Cover Sheet to BOP, confirming IPTU's receipt of Plaintiff's Application. *See* Fax Cover Sheet, dated January 4, 2008.

7.    Thereafter, the IPTU collected additional information before making a decision on Plaintiff's Application.

8.    On February 19, 2008, by letter to Institutional Reintegration Operations of the Correctional Service of Canada, IPTU approved Plaintiff's Application. *See* Letter from Wolff to Keravel dated February 19, 2008.

9.    As per our office policy, the IPTU retained an unsigned copy of such letter.

10.    Applications that are approved by the IPTU and forwarded to a foreign nation's corresponding authority are next considered by that foreign authority. If the foreign authority concurs with IPTU's approval, a detailed procedure is next conducted to effect the international prisoner transfer. This detailed procedure includes a hearing in the United States to ensure that the prisoner consents to the transfer. Once this hearing is completed and the prisoner has consented to the transfer, arrangements are made with the foreign country to send escorts to escort the prisoner back to his home country.

Further declarant sayeth not.

Paula Wolff
Chief
International Prisoner Transfer Unit,
U.S. Department of Justice

March 12, 2008
Date

# EXHIBIT H



**U.S. Department of Justice**

10ᵗʰ & Constitution Avenue, N.W.
Criminal Division
Office of Enforcement Operations

International Prisoner Transfer Unit
John C. Keeney Building, 12ᵗʰ Floor
Washington, D.C.  20530

FEB 1 9 2008

Julie Keravel, Director
Institutional Reintegration Operations
Correctional Service of Canada
340 Laurier Avenue West
Ottawa, Ontario  K1A 0P9
Canada

     Re:    Czinege, Steve Attila, Reg. No. 36288-086
             Approval of Request to Transfer to Canada

Dear Ms. Keravel:

     The United States has approved the request for transfer to Canada of the above-named
Canadian national who is currently incarcerated at the Lompoc Federal Correctional Institution,
Lompoc, California.  The application was forwarded to you on January 7, 2008.

                                        Sincerely,

                                        Paula A. Wolff, Chief
                                        International Prisoner Transfer Unit

cc:    Hélène Bouchard, Senior Consular Officer
      Embassy of Canada
      501 Pennsylvania Avenue, NW
      Washington, DC 20001

      Sandra Kaz
      Federal Bureau of Prisons

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEVE CZINEGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HARLEY G. LAPPIN, Director, | ) |
| Federal Bureau of Prisons, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 07-2178 (RCL)

## **ORDER**

UPON CONSIDERATION of Defendant's motion to dismiss, and for good cause shown,

it is hereby:

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that the Complaint in this action is hereby dismissed with prejudice.

_____
Date

_____
ROYCE C. LAMBERTH
United States District Judge